**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GREGORY HUESTON,

    Plaintiff,

    v.

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO CWA, LOCAL 13000, *et al.*,

    Defendants.

CIVIL ACTION NO. 3:16-CV-01588

(JUDGE CAPUTO)

## MEMORANDUM

Presently before this Court are two motions for summary judgment filed by: (1) Defendant Verizon Pennsylvania LLC ("Verizon") (Doc. 48), and (2) Defendants Communications Workers of America, AFL-CIO, CWA Local 13000 ("Local") and Communications Workers of America, AFL-CIO, CWA District 2-13 ("District") (collectively "Union Defendants") (Doc. 41). Summary judgment will be granted in favor of Verizon and the Union Defendants on Counts I and III of the Complaint because Plaintiff Gregory Hueston has failed to substantiate his claims that: (1) Verizon breached an obligation under the Collective Bargaining Agreement ("CBA"), and (2) the Union Defendants breached their duty of fair representation. Further, Plaintiff has conceded that Count IV does not raise a cognizable claim. As such, Defendants' Motions for Summary Judgment will also be granted with respect to Count IV.

### I. Background

**A. Factual Background**

    (1)    <u>The Parties</u>

Plaintiff Gregory Hueston was hired by Verizon in 1997 as an installer at its St. Clair, Pennsylvania work center. (Union Defendants' Statement of Undisputed Material Fact ("*UDSMF*"), at ¶12.) In 2000, Plaintiff applied for and accepted a new position: Outside Plant

Technician. (*UDSMF*, at ¶17.) As a Outside Plant Technician Plaintiff performed work on Verizon equipment located outside of customer locations. (Verizon's Statement of Undisputed Material Facts ("*VSMF*"), at ¶4.) Plaintiff remained in this position until his termination. (*VSMF*, at ¶1.)

During his employment with Verizon, Plaintiff was a member of the Communications Workers of America, AFL-CIO, CWA Local 13000 ("Local") . (*UDSMF*, at ¶11.) The Local represents CWA members in Pennsylvania. (*UDSMF*, at ¶2.) Such representation includes the preparation of grievances. As a member of the Local, Plaintiff was also an affiliate member of the Communications Workers of America, AFL-CIO, CWA District 2-13 ("District"). The District represents CWA members in several states and acts as a check on the Local. (*UDSMF*, ¶¶3, 10.) For example, grievances prepared by the local are reviewed by the District before any action is taken. (*UDSMF*, at ¶10.)

(2) The August 11, 2015 Incident

On August 11, 2015, Plaintiff was tasked to complete two jobs with three other members of the Local: Chris Sisko[1], Gregory McHugh, and Heath Bowers. The first job was located in Schuylkill Have, PA. (*UDSMF*, at ¶35.) The four workers traveled to the job site in two cars; Plaintiff and Bowers in one, and Sisko and McHugh in the other. (*UDSMF*, at ¶36.) The team completed the first job without incident. (*UDSMF*, at ¶37.) In fact, after completing the first job, the team took a break at a local pond and were "joking around and

---

[1] Chris Sisko and Plaintiff had a complicated history. They first met while in high school, and it appears that Sisko was one of many students who gave Plaintiff a hard time at school. (*UDSMF*, at ¶¶31-32.) After high school, the pair worked at the same company: Cresona Aluminum. (*UDSMF*, at ¶34.) But, while at Cresona, Plaintiff and Sisko did not regularly work together. (*Id.*) On the few occassions they did work together there was no altercation or reported bullying (*Id.*; *Plaintiff's Response to UDSMF*, at ¶34.) Later, the two began employment at Verizon. Plaintiff suggests that the two were "following each other" through life. (*Plaintiff's Response to UDSMF*, at ¶34.)

2

discussing family matters." (*Id.*) Stated differently, everyone was getting along.

The second job was located at the Robin Hill Campground. (*UDSMF*, at ¶35.) It was decided that Plaintiff and Bowers would go to Robin Hill directly from Schuylkill Have to determine the size of the job and the resources needed. (*UDSMF*, at ¶39.) At the same time, Sisko and McHugh would return to the work center and wait for a call from either Plaintiff or Bowers informing them about the materials needed for the Robin Hill job. (*Id.*) Upon arrival at Robin Hill, Plaintiff and Bowers discovered that the vast majority of the job had already been completed, all that was left for was for them to "transfer cables from one pole to another." (*UDSMF*, at ¶40.) As expected, Plaintiff and Bowers contacted Sisko and McHugh to inform them that no additional resources were needed for the job. (*UDSMF*, at ¶41.) Notably, Plaintiff and Bowers explained that Sisko and McHugh did not have to travel to Robin Hill, they could either work on another job or go home. (*Id.*)

Sisko and McHugh went to Robin Hill. (*UDSMF*, at ¶42.) When they arrived on scene Plaintiff and Bowers were in bucket lifts working on a power line. Immediately, Sisko confronted Plaintiff and Bowers about working in the rain. (*UDSMF*, at ¶43.) Plaintiff describes the interaction as follows:

> Chris Sisko came directly to me after talking to Heath Bowers. I did not think anything was coming about, he was going to be my ground man. He called to me and told me to come down I need to talk to you. I still did not think anything about why he wanted to talk. I started to come down. He stated: 'what are you doing we do not work in the rain.' Note - it was not raining when he was there, especially when talking to me. I stated it is not raining. He said 'you are always doing stuff like this working in the rain not following the rules. Lineman do not work in the rain.' I said it is not raining, he states, 'yes it is.' Then I was angry because I disagree and told him to get the f–k out of here.

(*UDSMF*, at ¶45.) Once Plaintiff was angered, the confrontation escalated rapidly. Plaintiff admits that he stated he would fight Sisko "here and now." (*UDSMF*, at ¶46.) But, at some point during the argument Sisko turned to leave, and began walking away from Plaintiff. (*UDSMF*, at ¶47.) At that point, Plaintiff again called to Sisko to "get the f–k out of here." (*Id.*) This caused Sisko to turn back to Plaintiff. (*Id.*) As Sisko turned back to Plaintiff, they

3

bumped chests.[2] Then, Plaintiff, "in anger, grabbed Sisko by the throat." (*Id.*) Luckily, McHugh stopped Plaintiff from strangling Sisko and physically positioned himself between Plaintiff and Sisko in order to de-escalate the situation. (*Id.*)

Following the altercation, Plaintiff refused to continue working at Robin Hill. (*UDSMF*, at ¶¶51, 54.) So, Sisko completed the job. (*Id.*)

While a Collective Bargaining Agreement ("CBA") prevents Verizon from "demot[ing]. . . discharg[ing] or suspend[ing] an employee without proper cause," the company may terminate an employee for violating its "zero tolerance" policy for violence in the workplace. (*UDSMF*, at ¶ 56 Ex. 14-15.) In relevant part, Verizon's Code of Conduct states that Verizon will "not tolerate any threatening, hostile or abusive behavior in the workplace . . . and will take immediate and appropriate action against offenders, up to and including termination of employment." (*UDSMF*, at ¶ 56 Ex. 14.)

Verizon conducted an investigation about the August 11th altercation. (*VSMF*, at ¶ 54.) During this investigation, Verizon placed Plaintiff and Sisko on indefinite suspension without pay. (*Id.*) Ultimately, at the conclusion of the investigation, Plaintiff and Sisko were terminated. (*VSMF*, at ¶ 55.)

(3)  The Investigation and Grievance Decision

Following Plaintiff's termination, the Local initiated an investigation. (*UDSMF*, at ¶¶ 58, 59.) This investigation was undertaken to support the multi-step grievance process outlined in the controlling CBA. (*VSMF*, at ¶ 56.) Throughout this investigation, Plaintiff claimed that the altercation stemmed from a history of bullying he endured at the hands of Sisko. (*UDSMF*, at ¶¶57-59.) But, no such evidence was located. (*Id.*) Plaintiff's representative and President of the Local, Anthony D'angelo, asked Verizon to produce records regarding Sisko's repeated bullying of Plaintiff. Verizon reported that no record existed. (*UDSMF*, at ¶58.) In an effort to find an alternative means to confirm Plaintiff's claim of bullying, D'Angelo interviewed a number of Plaintiff's co-workers. (*UDSMF*, at ¶59.)

---

[2] Notably, this "may have been accidental." (*UDSMF*, at ¶47.)

Unanimously, Plaintiff's co-workers stated they did not observe or have any knowledge of Sisko bullying Plaintiff. (*Id.*) The investigation, however, did provide some useful information that could be used to support a grievance about Plaintiff's termination. D'Angelo discovered that Plaintiff had diagnosed anger issues and a condition that resulted in the development of legions on Plaintiff's brain. (*UDSMF*, at ¶61.) There was serious doubt as to the effectiveness of a grievance focused on Plaintiff's medical history, but it was the only theory supported by evidence discovered as a result of the Local's investigation.[3]

So, despite finding no evidence to support Plaintiff's claim of systematic bullying, the Local grieved Plaintiff's discharge and argued that Plaintiff should not have been terminated because Plaintiff suffered from medical conditions that were responsible for the altercation with Sisko. (*UDSMF*, at ¶62.) Verizon refused to reconsider Plaintiff's termination at every stage of the grievance process. (*VSMF*, at ¶88.) In other words, the Local failed to have Plaintiff reinstated at Verizon.

Since the grievance had not been resolved, Plaintiff's last hope was that the Union would submit his claim for arbitration. (*VSMF*, at ¶66.) Procedurally, the District may request arbitration under Article 13 of the CBA. (*VSMF*, at ¶¶66, 73.) Here, the Local sent Plaintiff's grievance package to the District and recommended that Plaintiff's claim be arbitrated. (*VSMF*, at ¶¶79, 89.) Unfortunately, the District determined that Plaintiff's claim lacked merit and it was not referred for arbitration. (*VSMF*, at ¶90.) The District notified Plaintiff of its decision in a letter dated December 22, 2015. (*Id*.) Plaintiff appealed this decision on at least two occasions with no success. (*VSMF*, at ¶¶91-94.)

Notably, Sisko obtained a different outcome. The District referred Sisko's grievance for arbitration and Verizon allowed him to return to work. (*UDSMF*, at ¶63.)

---

[3] While Plaintiff's doctor did confirm his anger issues and that legions appeared on Plaintiffs brain, the doctor also noted that it "would be difficult at best to try and create a direct link" between Plaintiff's medical condition and the altercation with Sisko. (*Plaintiff's Response to UDSMF*, at ¶61.)

5

**B.    Procedural History**

On July 7, 2016, Plaintiff filed the instant action in the Court of Common Pleas of Schuylkill County. The case was removed to this Court pursuant to 28 U.S.C. §1441 after Verizon filed a Notice of Removal on August 1, 2016. Verizon filed an Answer to Plaintiff's Complaint on September 7, 2016. The Union Defendants filed their Answer after this Court granted their undisputed Motion to Strike Count II of the Complaint on September 9, 2016.

Verizon and the Union Defendants moved for summary judgment on October 10, 2017. Both Motions for Summary Judgment have been fully briefed and are ripe for review.

## II. Legal Standards

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.

*See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

**A. Counts I and III: Plaintiff's Hybrid Section 301 Claim**

Plaintiff's Complaint asserts a "hybrid" claim under Section 301 of the Labor Management Relations Act ("LMRA"), which authorizes "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations." 29 U.S.C. §185(a). A hybrid action under Section 301 "is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation." *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 236 (3d Cir. 1999) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)). "In the 'hybrid' suit, the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa." *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993) (citing *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981) (Stewart, J., concurring)). This means that the claims are "inextricably interdependent." *Id.*; *see also DelCostello*, 462 U.S. at 164-65.

Defendants believe they are owed summary judgment on Counts I and III because (1) Plaintiff is unable to establish a breach of the CBA, and (2) Plaintiff has produced no evidence to suggest the Union Defendant's actions were arbitrary, discriminatory, or made in bad faith.

(1) <u>Breach of the Collective Bargaining Agreement</u>

First, Plaintiff asserts that Verizon breached the CBA when the Company terminated his employment. In support of his argument, Plaintiff cites a single provision of the CBA: Section 11.01. Section 11.01 states that Verizon cannot "demote for misconduct, discharge or suspend an employee without proper cause." (*UDSMF*, at ¶ 56 Ex. 15.) Further, Plaintiff

8

cites Verizon's Employee Code of Conduct, which explains that the Company will "not tolerate any threatening, hostile or abusive behavior in the workplace . . . and will take immediate and appropriate action against offenders, up to an including termination of employment." (*UDSMF*, at ¶ 56 Ex. 14.) In other words, Plaintiff has accepted that violence in the work place establishes "cause" for a termination.

Remember, Plaintiff physically assaulted his co-worker by wrapping his hands around his co-worker's throat. Accordingly, Plaintiff was terminated. Thus, Verizon did not violate Section 11.01 when it terminated Plaintiff for assaulting his co-worker because Plaintiff violated the Company's Code of Conduct. For this reason, Plaintiff's reliance on Section 11.01 to illustrate a genuine dispute is misplaced.

Additionally, Plaintiff argues that Verizon breached the CBA when it terminated his employment because the termination-inducing incident "was the result of years of supervisor [sic] tolerating hostile and abusive behavior in the workplace. . . ." (Doc. 55, at 12). However, Plaintiff fails to cite a single provision of the CBA that was breached by Verizon's alleged failure to prevent Plaintiff's bullying. Instead, Plaintiff relies on arbitration decisions–that are neither controlling nor persuasive–to suggest that it may be inappropriate to terminate an employee who is physically provoked to act in a violent manner. *See Mercury Marine Div. of Brunswick Corp. Fond du Lac, Wis. v. IAMAW, Dist. 10 Lodge No. 1947*, 2006 WL 7277105 (Feb. 28, 2006) (Suntrup, Arb.).

Since Plaintiff is unable to establish a genuine dispute of material fact regarding Defendants' breach of the CBA, Verizon is owed summary judgment on Count III of the Complaint. Further, the Union Defendants are owed summary judgment on Count I of the Complaint because Plaintiff's claim that the Union Defendants breached their duty of fair representation may not survive absent a breach of the CBA. *See Felice*, 985 F.2d at 1226; *see also DelCostello*, 462 U.S. at 164-65.

9

Because Plaintiff has failed to present any evidence that a breach of the CBA occurred, judgment will be entered in favor of Defendants and against Plaintiff for Counts I and III.

(2)  Duty of Fair Representation:

Even though Plaintiff's Section 301 claim fails due to Plaintiff's inability to identify a breach of the CBA, I will still analyze Plaintiff's claim that the Union Defendants breached their duty of fair representation.

The duty of fair representation requires unions "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Felice*, 985 F.2d at 1228; *see also Findley v. Jones Motor Freight, Div. Allegheny Corp.,* 639 F.2d 953, 957 (3d Cir. 1981) (explaining that because a union is authorized to act as the exclusive bargaining agent for its members, it has a "duty to provide fair representation in the negotiation, administration, and enforcement of the collective bargaining agreement."). Thus, to show breach of the union's duty of fair representation, an employee must show that the union's "actions [were] either arbitrary, discriminatory, or in bad faith." *Masey v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (1986) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). "A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998) (citing *Air Line Pilots v. O'Neill*, 499 U.S. 65, 78-81 (1991)). Stated differently, "a union's actions are arbitrary only if . . . [its] behavior is so far outside a 'wide range of reasonableness' . . . ." *O'Neill*, 499 U.S. at 67 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Further, a union's conduct is "in bad faith when it acts with an improper intent, purpose, or motive." *See Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998); *see also Good Samaritan Med. Ctr. v. NLRB*, 858 F.3d 617, 630 (1st Cir. 2017);

*Boyer v. Johnson Matthey, Inc.*, 2-cv-8382, 2005 WL 35893, *9 (E.D. Pa. Jan. 6, 2005) ("To demonstrate bad faith, the plaintiff must show that the union had hostility toward plaintiff . . . and that the hostility negatively affected the union's representation of the plaintiff."). Such conduct includes fraud, dishonesty, and other intentionally misleading conduct. *See, e.g.*, *Spellacy*, 156 F.3d at 126; *Baxter v. United Paperworks Int'l Union, Local 7370*, 140 F.3d 745, 747 (8th Cir. 1998); *Mock v. T.G. & Y Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992).

Notably, the duty of fair representation "does not confer on an employee an absolute right to force his collective bargaining agent to press his complaint all the way to the very end of the grievance procedures made possible under the collective bargaining agreement." *Bazarte v. United Transp. Union*, 429 F.2d 868, 873 (3d Cir. 1970). Instead, a union may "make a good-faith determination that discipline is entirely deserved," and its defense of the employee is not warranted. *Vaca*, 386 U.S. 171, 195; *see also Bazarte*, 429 F.2d at 872.

Here, Plaintiff argues that the Union Defendants breached their duty of fair representation when they acted arbitrarily and in bad faith with respect to his grievance. In support of this conclusion, Plaintiff first contends that the Local's representative responsible for his grievance, D'Angelo, proceeded with an arbitrary strategy. Remember, D'Angelo decided to focus Plaintiff's grievance on his diagnosed medical condition and treatment for anger issues. The undisputed evidence suggests that while this strategy was not likely fruitful[4], it was the *only* strategy supported by any evidence. Plaintiff argues, however, that D'Angelo would have found success if he had focused on Plaintiff's claim that Sisko had regularly bullied him. But, after a seemingly exhaustive investigation[5] D'Angelo found no

---

[4] Plaintiff's doctor noted that it "would be difficult at best to try and create a direct link" between Plaintiff's medical condition and the altercation with Sisko. (*Plaintiff's Response to UDSMF*, at ¶61.)

[5] Plaintiff acknowledges that D'Angelo conducted an investigation. And, Plaintiff does not refute the lack of evidence obtained by D'Angelo to

11

support for Plaintiff's claim. In fact, Plaintiff had never reported an incident of bullying to Verizon, and not one of Plaintiff's co-workers would support his bullying claim. Thus, D'Angelo was left to argue that Plaintiff's violent outburst was a result of his medical condition. D'Angelo's pursuit of this strategy does not amount to a breach of the duty of fair representation. *See Riley v. Letter Carriers Local*, 668 F.2d 224, 228 (3d Cir. 1981) ("the fact that trained counsel would have avoided the error or pursued a different strategy is not enough."); *Bazarte*, 429 F.2d at 872 (noting that "proof that the union may have . . . exercised poor judgment is not enough to support a claim for unfair representation.").

Next, Plaintiff suggests that the Local acted in bad faith when pursuing his grievance. Principally, Plaintiff claims that D'Angelo prioritized Sisko's grievance because D'Angelo and Sisko were friends. (*VSMF*, at ¶82.) For example, Plaintiff notes that D'Angelo requested that he recant his allegations against Sisko so that Sisko could be cleared of any wrongdoing. (*VSMF*, at ¶¶80-81.) However, Plaintiff points to no credible evidence which suggests that D'Angelo and Sisko are friends or that D'Angelo sought to prioritize Sisko's grievance. Further, Plaintiff's allegation contradicts logic as it is known that D'Angelo moved for the arbitration of Plaintiff's grievance.[6] It was the District, not the Local, that ultimately decided not to arbitrate Plaintiff's grievance. Plaintiff has also provided no evidence to suggest anyone at the District harbored any ill will towards him during the grievance process. Put simply, Plaintiff has not offered more than a mere allegation or conclusion that D'Angelo, and therefore the Local, acted in bad faith.

---

support his claims of systematic bullying. Instead, Plaintiff claims that the "tension" reported to D'Angelo during the investigation was cast aside as "personal squabbles."

[6] The Local moved to arbitrate Plaintiff's grievance. (*VSMF*, ¶89.) To that end, the Local submitted Plaintiff's grievance to the District for further and final review. Once with the District, Plaintiff's grievance was deemed meritless and the union decided not to pursue arbitration. (*VSMF*, at ¶90.)

12

It is important to remember that on summary judgment "the non-movant's burden is rigorous: it must point to concrete evidence in the record; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Fried v. Tetzlaff*, No. 11-2578, 2014 WL 2861098, *6 (3d Cir. Jun. 24, 2014) (citing *Orsatte v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)); *Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010)); *see also Masy v. New Jersey Transit Rail Operations, Inc.,* 790 F.2d 322, 328 (3d Cir. 1986) (holding that "bare assertions" of arbitrary conduct by a union does not constitute a valid reason to deny summary judgment). With this in mind, Plaintiff's allegation concerning a relationship between Sisko and D'Angelo will not prove sufficient to prevent summary judgment.

Finally, Plaintiff appears to argue that the failure to arbitrate his grievance was, *per se*, a breach of the duty of fair representation. This is incorrect. As noted earlier, an employee does not have "an absolute right to have his grievance taken to arbitration." *Bazarte*, 429 F.2d at 873. This principle is in accord with the obligation of the union "not to assert or press grievances which it believes in good faith do not warrant such action." *Gehringer v. Atl. Detriit Diesel Allison, LLC*, 595 Fed. App'x 157, 161 (3d Cir. 2014) (citing *Bazarte*, 429 F.2d at 872). Further, contrary to Plaintiff's belief, the controlling CBA does in fact contain discretionary language related to the ability of an employee to seek arbitration. Specifically, the CBA notes:

> If the controversy is processed under these sections and is not satisfactorily settled, the Union or the Company, by written notice specifying the Section of the Agreement alleged to be violated, *may* submit the question under dispute to arbitration in accordance with the provisions of Article 13 of this Agreement.

(Doc. 44-15, at 22 (*emphasis added*).) Moreover, Plaintiff seems to concede that the decision to arbitrate only constitutes a breach of the duty of fair representation if the arbitration decision was made arbitrarily or in bad faith. (Doc. 55, at 16.) Again, Plaintiff has offered no credible evidence to suggest the Union Defendants acted in such a way.

13

Conversely, the Union Defendants made a thoughtful decision after making a good faith effort to determine the veracity of Plaintiff's claims. In fact, Plaintiff pursued numerous appeals within the Union about the decision not to arbitrate, and each appeal affirmed that Plaintiff's grievance was without merit. The Union's decision not to arbitrate, alone, does not constitute a breach of its duty of fair representation.

Plaintiff has been unable to establish that there is a genuine dispute of fact regarding the Union Defendants' breach of their duty of fair representation. Rather, Plaintiff has relied on baseless allegations and mere speculation in an attempt to survive Defendants' Motions for Summary Judgment. Because such allegations fail to meet the non-movant's burden, the Union Defendants are owed summary judgment on Count I. *See Fried*, 2014 WL 2861098, at *6 ("[M]ere allegations, conclusions, conjecture, and speculation will not defeat summary judgment."). This provides an alternate basis to enter judgment in favor of Defendants and against Plaintiff for Counts I and III of the Complaint.

## B. Count IV: Wrongful Discharge

Plaintiff has conceded that his claim of Wrongful Discharge against Verizon in Count IV is not legally cognizable. (Doc. 55, at 21 (citing *Coppola v. JNESO-Pocono Med. Ctr.*, 400 Fed. App'x 683 (3d Cir. 2010).) Therefore, judgment will be entered in favor of Verizon and against Plaintiff with respect to Count IV of the Complaint.

## IV. Conclusion

For the above stated reasons, judgment will be entered in favor of Defendants and against Plaintiff on Counts I, III, and IV.

An appropriate order follows.

| | |
|---|---|
| January 25, 2018 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo<br>United States District Judge |